

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA HOWARD, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 05 C 1577 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| MICHAEL SHEAHAN, in his official ) | |
| capacity as Cook County Sheriff, TIMOTHY ) | |
| DOODY, LIEUTENANT GROCHOWSKI, ) | |
| AND SUPERINTENDENT SNOOKS ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Donna Howard claims that three of her supervisors in the Cook County, Illinois Sheriff's Department sexually harassed her and then retaliated against her for complaining about the harassment. Consequently, she sued the Sheriff and the three supervisors. Both parties move for summary judgment.

Before detailing the undisputed events that transpired, the Court must first address a procedural question. Howard claims that the Defendants failed to respond to her request to admit, and therefore have conclusively admitted to the facts contained therein. Howard served a request to admit upon the Defendants on November 29, 2006. Howard claims she never received a response to her request and therefore, pursuant to Rule 36(a) the Defendant has admitted to the statements of fact contained in her request. *See* Fed. R. Civ. P. 36(a); *DeCola v. Kosciusko County Sheriff's Dept.*, No. 06-CV-176, 2007 WL 1650921, *1 (N.D. Ind., Jun, 5, 2007) (admissions occur automatically by rule of law at expiration of 30 day period).

1

Defendants contend that they did in fact respond to Howard's admissions, and attach a certificate of service dated December 26, 2006, a notarized copy of their answers, and an affidavit attesting to the placement of the response in the mail, addressed to Howard's attorney. Under Rule 5, service by mail is complete upon mailing. Fed. R. Civ. P. 5(b)(1)(B). Howard replies that Defendants mailed the answers to her attorney's former address.

An examination of the Court's docket reveals that Defendants did, in fact, mail their response to Plaintiff's counsels' former address. Nothing on the Court's docket, however, suggests that Plaintiff's counsel notified the Court of their current address. In fact, one of Plaintiff's counsel continues to list the former address as the address of record on the Court's docket as of March 4, 2008. Further, Defendants mailed the response to the address listed on two of Howard's attorneys' appearance forms. Although numerous correspondence between the attorneys and other court filings suggest that Defendants knew of Howard's attorneys' change of address, an administrative assistant mailed the responses the day after Christmas. It is more than understandable that, working during the holiday season, she quickly examined the Court's docket and scanned Howard's attorneys' appearance form to locate an address to serve the response. At worst, Defendants have engaged in a clerical error, caused in large part by Plaintiff's counsels' failure to notify the Court of the change in their address. The Court therefore deems Defendants to have properly answered Howard's requests to admit.

Even were it not to do so, Rule 36(b) allows a party to withdraw its admission upon a showing of good cause and where the presentation of the merits of the case would be subserved by denying a request to withdraw the admissions and the opposing party would not suffer prejudice in pursuing its case because of the withdrawal. Here, there is good cause, as noted above, and the

merits of the case would clearly suffer should the Court deny such a motion. Given that Howard had ample opportunity to discuss with Defendants any supposed failure to respond to the request to admit and that her attorneys contributed to the failure of the requests to be routed to the proper address, the Court would exercise its discretion under Rule 36(b) to allow Defendants to withdraw those admissions upon the filing of a motion to do so. *See* Fed. R. Civ. P. 36(b); Fed. R. Civ. P. 16. The Court shall not determine the merits of the case on a clerical error, particularly one that both parties are to blame for. As a result, the Court strikes any statements of fact propounded by Howard that rely solely on the request to admit.

Putting aside the question of the requests to admit, the facts are relatively straightforward, and largely undisputed, though the Court interprets in a light favorable to the non-moving party any which the parties do contest.

Howard worked as a corrections officer within Division I of the Cook County Sheriff's Department of Corrections in the facility located near 26th Street and California in Chicago. On April 15, 2004, Sergeant Doody, Howard's immediate supervisor at the time, told Howard that "you are the sunshine in my life; you are a beautiful woman; you are a sexy woman; you are the light in my heart." Though Howard said nothing to Doody at the time, she used "body language" and "facial expressions" to inform him that his comments were not welcome. (Howard Dep. at 69-70).

During the next few weeks, Doody asked Howard to go on a date with him three times. (Howard Dep. at 72). The first time, Doody came to Howard near the end of her shift and told her that if they "had to stay late and find this ID, [she would] owe [him] a drink." (Howard Dep. at 72-74). Howard told Doody that she did not want to get a drink with him, which frustrated Doody. (Howard Dep. at 74). The second time, Doody informed Howard that he had purchased a new truck

3

and his wife was upset with him and then asked her out. (Howard Dep. at 74). Finally, during a lockdown, Doody came to Howard's work area and asked when they were going out. (Howard Dep. at 158). Although she declined his offers, Howard did not immediately tell Doody that she did not welcome his inquires. (Howard Dep. at 75).

Howard instead reported Doody's offers for dates to Sergeant Elliot Taylor, with whom she had a romantic relationship. (Howard Dep. at 75). Taylor encouraged Howard to report Doody's advances, but she did not immediately do so. In the interim, she observed that Doody failed to respond to her concern about a safety-issue with an inmate and a commissary employee. (Howard Dep. at 94-97). Another time, Doody called Howard "crazy" in front of Taylor and inmates. (Howard Dep. at 102). During their careers at the Department of Corrections, Doody and Howard worked together for only ten days. (Pl. 56.1(b)(3)(B) St. ¶ 37).

Howard also alleges that Lieutenant David John Grochowski sexually harassed her. Sometime in April or May 2004, Doody received a phone call at her work station from Grochowski, who told her that she was "hot." (Howard Dep. at 83). Howard hung up the phone, but Grochowski then came to her work area to "leer" at her. (Howard Dep. at 91-92). Howard did not complain about Grochowski's conduct until she filed the June 9 sexual harassment complaint.

On May 9, Howard spoke to Captain Miller and verbally complained about Doody's and Grochowski's behavior. (Howard Dep. at 125). Miller informed Superintendent Snooks of Howard's complaints. (Pl. Ex. 8). Miller informed Snooks that Howard had told him that she believed the "situation [could] be resolved with a second conference involving herself, Sergeant Doody and [Snooks]." (Pl. Ex. 8). Miller also informed Snooks that Howard did not wish to "submit any official report." (Pl. Ex. 8).

4

On May 12, Howard met with Snooks and Miller in Snooks's office. (Howard Dep. at 115). At the meeting, Snooks berated Howard for troubling him, spoke of his political clout, and ignored her claims that she was being harassed. (Howard Dep. at 116-118). Three days later, Doody and Grochowski "leered" at Howard during role call. (Howard Dep. at 102-103). In response, Howard left work and sought medical attention. (Howard Dep. at 129). She has not returned to work since leaving. (Howard Dep. at 197-98).

Ultimately on June 9, 2004, Howard completed a sexual harassment complaint that she directed to Snooks through Taylor. (Def. 56.1(a) St. ¶ 13). As a result of her complaint Snooks directed Doody to have no further contact with Howard. (Pl. 56.(b)(3)(B) St. ¶ 38). She also applied for duty disability on June 9 based on the stress caused by Doody's and Grochowski's behavior. (Howard Dep. at 147). The Pension Board denied Howard's application for duty disability. (Howard Dep. at 150).

The first two counts of Howard's claim are identical claims that Defendants create a hostile work environment. Title VII protects employees from workplace harassment. *Patton v. Keystone RV Co.*, 455 F.3d 812, 815 (7th Cir. 2006). Conduct that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive workplace environment, and therefore violates Title VII. *Id.* But not all offensive conduct violates Title VII. *Id.* Consequently, courts must focus on the specific characteristics of the alleged harassment to determine the severity or pervasiveness of the harassment.

In this case, the conduct of which Howard complains falls well below the threshold necessary to demonstrate severe or pervasive conduct that altered the conditions of her employment. In total, Doody four times complimented Howard, only one of which contained even the slightest of sexual

innuendo and none of which contained even a hint of vulgarity. Doody also thrice asked Howard on a date, and none of these solicitations contained any reference to sexual behavior or any vulgar or lewd comments. Throughout the ten days they worked together, Doody occasionally leered at or ogled her. Grochowski's behavior was even more innocuous. He once told Howard she was "hot" and twice leered at or ogled her.

The Seventh Circuit has repeatedly rejected hostile work environment claims based upon an overly amorous supervisor's occasional advances. For instance, the Seventh Circuit held that the conduct of a supervisor who took a plaintiff to a jazz club, placed his hand on her thigh, kissed her, and later asked her on a date and lurched at her from behind some bushes was not sufficiently severe or pervasive as to create an hostile work environment. *Saxton v. AT&T Co.*, 10 F.3d 526, 528-534 (7th Cir. 1993). In another case, Seventh Circuit has also rejected attempts to claim hostile work environment based upon several unsuccessful attempts by a supervisor to kiss a plaintiff and ask her on dates. *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993); *see also Dockter v. Rudolf Wolff Futures, Inc.*, 913 F.3d 456, 459-61 (7th Cir. 1990) (supervisor who "came-on" to plaintiff for two weeks at the start of employment did not rise to level of hostile work environment).

In other cases, the Seventh Circuit has rejected hostile work environment claims where the alleged harasser's behavior was far more intrusive that what Howard alleges here. A supervisor who pulled back a plaintiff's shirt to examine her bra did not create an hostile work environment. *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004). A co-worker who four times touched a plaintiff's arms, fingers, and buttocks did not create an hostile work environment. *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998).

In comparison, the affections of Doody and Grochowski, which certainly might have been inappropriate, are not sufficiently severe or pervasive to create an hostile work environment.[1]

Howard also claims that after she complained of Doody's and Grochowski's behavior that they and Superintendent Snooks retaliated against her. Although retaliation need not take the form of an adverse employment action to be actionable, "'petty slights or minor annoyances'" will not establish a Title VII retaliation claim. *Nair v. Nicholson*, 464 F.3d 766, 768-69 (7th Cir. 2006) (quoting *Burlingotn Northern & Santa Fe Ry. v. White*, 548 U.S. 53, —, 126 S.Ct. 2405, 2409, 2415-16, 165 L.Ed.2d 345 (2006)). A materially adverse employment action for purposes of a retaliation claim is one that would dissuade a reasonable employee from making a claim. *White*, 548 U.S. at —, 126 S.Ct. at 2415.

The undisputed evidence demonstrates that after Howard rejected his advances, Doody once called her "crazy," once deprived her of going to the bathroom, and once ignored her suggestion regarding a safety issue. These are more akin to petty slights than retaliatory acts and simply do not rise to a level sufficient to deem retaliatory. *See, e.g., Roney v. Ill. Dep't. Of Transp.*, 474 F.3d 455 (7th Cir. 2007). Although targeting an employee for a particularly dangerous job assignment might rise to the level of a retaliatory action, *see Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007), Howard points to nothing to suggest the alleged safety concern affected her and not other Sheriff's employees. In other words, the mere fact that Doody might have ignored Howard did not single her out for a particularly dangerous assignment; it affected all Sheriff's employees equally.

---

[1] Because an equal protection claim based upon sexual harassment follows the contours of a Title VII claim, but where a plaintiff must also demonstrate a discriminatory intent, *see Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990), Howard's § 1983 claim also fails because she cannot establish that Doody's and Grochowski's alleged discriminatory conduct was severe or pervasive.

7

Howard also claims that Superintendent Snooks caused her disability complaint to be denied, but points to no evidence to support this claim. In essence, Howard points only to petty slights or minor annoyances, which are insufficient to support a Title VII retaliation claim.

Howard concedes that her 28 U.S.C. § 1981 claim lacks merit, and consequently, the Court GRANTS Defendants' Motion for Summary Judgment in its entirety and DENIES Plaintiff's Motion fo Summary Judgment in its entirety.

IT IS SO ORDERED.

_____3/4/08_____
Dated

_____
Hon. William J. Hibbler
United States District Court